## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**WILLIAM HERBERT VILLAR,**
**AIS #  245066,**                                  :

      **Plaintiff,**                            :

**vs.**                                             :      **CIVIL ACTION 07-0503-CG-C**

**JOHN FURMAN, et al.,**                            :

      **Defendants.**                          :

## REPORT AND RECOMMENDATION

Plaintiff, an inmate Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  After consideration of the record, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii) because plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted..

**I.  Complaint as Amended (Docs. 1, 5, 6 & 7).**

Plaintiff filed a forty-five page complaint against John Furman and Steve Giardini, assistant district attorneys for Mobile County, Alabama, and Brenda Hassell, the victim's mother.  (Doc. 1).  Thereafter, Plaintiff amended his complaint for the purpose of adding

grounds and Herman Young Thomas, former Circuit Court Judge for Mobile County, Alabama, as a defendant.  (Docs. 5, 6 & 7).  The Court notes that plaintiff's complaint as amended does not comply with requirement of Rule 8(a) of the Federal Rules of Civil Procedure that the complaint be a "short and plaint statement."  Instead, the complaint as amended is excessively lengthy for the information that it conveys and the allegations are repeated numerous times therein.  The Court, therefore, discerns plaintiff's claims as best it can and describes them in a manner to avoid the repetition found in plaintiff's pleadings.

In this action plaintiff is challenging his December 2, 2005 convictions for rape, second degree; sodomy, second degree; enticing a minor to enter a vehicle; intimidating a witness; criminal solicitation to commit murder; and escape, second degree, and his resulting sentences, namely, a sentence of life imprisonment and four, ten-year concurrent sentences.  (Doc.1 at 6).[1]  For relief, Plaintiff requests that his sentences be overturned, charges be dismissed with prejudice, damages be awarded for his losses and mental anguish.  (Doc. 1 at 7).

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because plaintiff is proceeding *in forma pauperis*, the Court is reviewing the complaint as amended (Docs. 1, 5, 6, & 7) under 28 U.S.C. § 1915(e)(2)(B).[2]  Under §

---

[1]This is plaintiff's description of his punishment.  Although plaintiff is conveying that he has five sentences and six convictions. .

[2]The predecessor to this section is 28 U.S.C. § 1915(d).  Even though Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the failure to state a claim analysis contained in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered.  *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534

1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. *Id.* Judges are accorded "not only the authority to dismiss [as frivolous] a claim based on indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (noting that § 1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P. 12(b)(6))). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* at 1965. That is, the allegations must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* at 1966 (second brackets in original). "[L]abels and conclusions and a formulaic recitation of a cause of action's elements" are insufficient for grounds for entitlement to relief. *Id.* at 1959. However, when a successful affirmative defense, such as the statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*,

---

U.S. 1044 (2001); *Brown v. Bargery*, 207 F.3d 863, 866 n.4 (6th Cir. 2000). However, dismissal under § 1915(e)(2)(B) is now mandatory. *Bilal*, 251 F.3d at 1348-49.

127 S.Ct. 910, 920-21 (2007).

## III. Discussion.

### A. Claims for Injunctive Relief.

Plaintiff's requests to have his sentences overturned and to have his charges dismissed with prejudice are injunctive relief requests seeking his release from confinement.  (Doc. 1 at 7).  These requests are based on his § 1983 complaint's challenges to his convictions and sentences.  However, "'habeas corpus is the exclusive remedy for a state prisoner who challenges that fact or duration of his confinement and seeks immediate or speedier release.'"  *Abella v. Rubino,* 63 F.3d 1063, 1066 (11th Cir. 1995) (quoting *Prieser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827 (1973)).  Therefore, in a § 1983 action "declaratory or injunctive relief claims which are in the nature of habeas corpus claims - i.e., claims which challenge the validity of the claimant's conviction or sentence and seek release - are simply not cognizable."  *Id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994)).  As a consequence, plaintiff's claims for injunctive relief are due to be dismissed as frivolous.

Plaintiff also requests to be compensated with damages for his allegedly unconstitutional convictions and sentences.  No indication is given, however, that either his convictions or sentences have been invalidated.  *See* Doc. 1, at 6-7.  Therefore, the rule of law from *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364 (1994), may apply and preclude plaintiff's claims, or some of his claims, from proceeding[3].  Before examining

---

[3]In *Heck*, a prisoner filed a § 1983 damages action against the prosecutors and investigator in his criminal case for their actions that resulted in his conviction.  The Supreme

whether *Heck* is applicable, district courts have been advised to determine if any

defendants are entitled absolute immunity so they may be dismissed and avoid future

litigation if the action is brought again when *Heck* would not preclude the action.  *Abella,*

63 F.3d at 1065 n.3.  Accordingly, the Court will discuss each defendant in turn because

---

Court analogized the plaintiff's claim to a common-law cause of action for malicious
prosecution, which had as a required element that the accused prove the termination of the prior
criminal proceeding for the accused.  *Id.* at 484, 114 S.Ct. at 2371.  The *Heck* Court opined:

> We think the hoary principle that civil tort actions are not
> appropriate vehicles for challenging the validity of outstanding
> criminal judgments applies to § 1983 damages actions that
> necessarily require the plaintiff to prove the unlawfulness of his
> conviction or confinement, just as it had always applied to actions
> for malicious prosecution (footnote omitted).
>
> We hold that, in order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for other harm
> caused by actions whose unlawfulness would render a conviction
> or sentence invalid, (footnote omitted), a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed on direct
> appeal, expunged by executive order, declared invalid by a state
> tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas corpus,
> 28 U.S.C. § 2254.  A claim for damages bearing that relationship
> to a conviction or sentence that has *not* been so invalidated is not
> cognizable under § 1983.  Thus, when a state prisoner seeks
> damages in a § 1983 suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily imply the
> invalidity of his conviction or sentence; if it would, the complaint
> must be dismissed unless the plaintiff can demonstrate that the
> conviction or sentence has already been invalidated.  But if the
> district court determines that the  plaintiff's action, even if
> successful, will *not* demonstrate the invalidity of any outstanding
> criminal judgment against the plaintiff, the action should be
> allowed to proceed (footnote omitted), in the absence of some
> other bar to the suit (footnote omitted).

*Id.* at 486-87, 114 S.Ct. at 2372-73.

there are grounds on which each defendant is due to be dismissed.

## B. Conspiracy Claims.

Plaintiff's conspiracy claims are found in his amended complaints.  Because these claims are without merit due to the lack of supporting allegations, they are being discussed at this point in the recommendation for clarity's sake.  Defendants Thomas, Furman, and Giardini are alleged to have conspired to give plaintiff an unfair trial and to convict him.  (Doc. 5 at 7-8; Doc. 6 at 7-9; Doc. 7 at 2).  These following statements are offered in support of the conspiracy.  Plaintiff contends that defendant Thomas ruled against him on his "motion for mandamus to remove Judge Thomas" in order to cover up the consolidation of offenses.  (Doc. 7 at 3-4).  Defendant Furman referred to a passage in the sentencing hearing transcript as being incorrect, but defendant Thomas allowed it.[4] (Doc. 7 at 2).  Defendant Giardini admitted the poster was prepared one week before trial and paid for by defendant Hassell.  (Doc. 7 at 3).  One conspiracy allegation also includes, almost as an afterthought, that defendant Hassell "aided" them.  (Doc. 6 at 9).  But, most of the instances when plaintiff alleges that the three state defendants conspired, he merely states in a conclusory manner that they "conspired."  *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) (vague and conclusory allegations of a conspiracy are to be dismissed).  Most important though is that no allegations are provided showing that the defendants, particularly the three state defendants, communicated among themselves to reach an agreement to convict him.

_____

[4]This allegation was not clear to the Court, and, as result, its interpretation is not clear.

In order to state a conspiracy claim under § 1983, "a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." *Bailey v. Board of County Comm'rs of Alachua County,* 956 F.2d 1112, 1122 (11th Cir.) (quotation omitted), *cert. denied*, 506 U.S. 832 (1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication." *Id.* The mere stringing together of events of a process without a showing of contacts demonstrating that an understanding was reached is not sufficient to establish a conspiracy. *See Harvey v. Harvey,* 949 F.2d 1127, 1133 (11th Cir. 1992) (ruling that stringing together the discreet steps in the commitment process without alleging contacts that would prove an understanding was reached did not state a conspiracy claim).

In the present action, the allegations of conspiracy are vague and conclusory. They fail to show communication and agreement. Therefore, plaintiff has failed to state a conspiracy claim under § 1983 and, as a consequence, the conspiracy claim is due to be dismissed.

**C. Claims Against Defendant Furman.**

The first defendant identified by plaintiff in section III of the complaint is John Furman, an assistant district attorney.[5] Plaintiff complains that defendant Furman filed a motion to consolidate all of plaintiff's criminal cases by contending the offenses were of

---

[5]The defendants to this action are those persons who are listed in section III of the complaint form. *See* Doc.1, D.

the same or similar character, or based on the same conduct or are otherwise connected, or are part of a common scheme or plan, and their combined trial will reduce the time and expense spent.  (Doc. 1, at 10).  Whereas, defense counsel maintained that there should be three different trials, specifically, a rape/sodomy trial, an intimidating a witness/criminal solicitation to commit murder trial, and an escape trial.  (*Id.* at 11).  The motion to consolidate was granted, and plaintiff was tried on all of the charges together.  (*Id.* at 14).  However, at sentencing, plaintiff asserts that defendant Furman resorted to "tearing apart" the reasoning that he had used in support of his consolidation motion when at sentencing he offered that the "sex charges" are a part of the same conduct and that the criminal solicitation to commit murder occurred much later and the escape charge was even more remote in time.  (*Id.* at 16, 24, 27).  Defendant Furman asked for the maximum sentence on the "sex charges" and on the charge of criminal solicitation to commit murder, with them to be served consecutively.  (*Id.* at 18-19; Doc. 5 at 2-4).  The maximum sentence on the charge of criminal solicitation to commit murder is life imprisonment.  (Doc. 1. at 17).  Plaintiff considers his life sentence excessive, because he had no criminal history, was employed, and owned his home, and inappropriate, considering that defendants who actually commit murder receive a sentence of life imprisonment.[6]  (*Id.* at 20).  Plaintiff avers that defendant Furman denied him a fair trial and lied under oath regarding the

---

[6]Plaintiff provides more detail of this claim in the first amend complaint (Doc. 5) where he also includes a challenge to the sentence for his conviction of enticing a minor to enter a vehicle.

motion to consolidate.  (*Id.* at 14).

As a prosecutor, defendant Furman is entitled to absolute prosecutorial immunity from damages in this § 1983 action for acts or omissions associated with the judicial process, in particular, those taken in initiating a prosecution and in presenting the government's case.  *Imbler v. Pachtman,* 424 U.S. 409, 430-31, 96 S.Ct. 984 (1976); *Wahl v. McIver,* 773 F.2d 1169, 1173 (11th Cir. 1985); *Fullman v. Graddick,* 739 F.2d 553, 558-59 (11th Cir. 1984).  "Generally, prosecutorial actions that occur in court are shielded by absolute immunity, *see Burns,* 500 U.S. at 491-92, 111 S.Ct. at 1942; *Imbler,* 424 U.S. at 430-31, 96 S.Ct. at 995, even where the prosecutor knowingly proffers perjured testimony or fabricated exhibits, *Rowe,* 279 F.3d at 1279-80."  *Rivera v. Leal,* 359 F.3d 1350, 1354 (11th Cir. 2004).  "[A]bsolute immunity extends to a prosecutor's 'acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State."  *Jones v. Cannon,* 174 F.3d 1271, 1281 (11th Cir. 1999) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993)).  Absolute prosecutorial immunity "typically is stretched far into the case and even into its afterlife."  *Neville v. Classic Gardens*, 141 F. Supp.2d 1377, 1383 (S.D. Ga. 2001) (citing *Allen v. Thompson,* 815 F.2d 1433, 1434 (11th Cir. 1987) (finding a prosecutor was entitled to absolute immunity for writing an allegedly malicious letter to the Parole Commission)).

Defendant Furman's acts of arguing a motion for consolidation, then allegedly contradicting those positions in his arguments at sentencing, allegedly lying under oath

9

during judicial proceedings, and asking for the maximum sentences on the "sex" charges and the criminal solicitation to commit murder charge are involved in the judicial phase of a criminal prosecution.[7]  These actions occurred in court during the prosecution of plaintiff while defendant Furman was acting as an advocate for the state.  Accordingly, defendant Furman is entitled to absolute prosecutorial immunity from plaintiff's damages claims against him.  *See Woodard v. Hardenfelder,* 845 F. Supp. 960 (E.D.N.Y. 1994) (finding that absolute prosecutorial immunity encompassed the prosecutor's motion to consolidate).  The claims against defendant Furman are, therefore, due to be dismissed with prejudice as frivolous.

### D. Claims Against Defendant Giardini.

Plaintiff also sued defendant Steve Giardini, an assistant district attorney.  Plaintiff claims that defendant Giardini under oath in open court at trial submitted "illegal manufactured evidence" prepared for trial.  (*Id.* at 30).  Plaintiff maintains that the week before trial the victim's mother, defendant Brenda Hassell, re-created the poster that she made the day that she learned her daughter was missing.  (*Id.*).  The re-creation was made at Kinko's and contained a school picture of the victim.  (*Id.* at 34).  Defense counsel objected to its use because it was not the original poster, had a tendency to mislead jurors, and was prejudicial.  (*Id.* at 31).  Plaintiff maintains that the victim, at trial and nineteen

---

[7]Plaintiff used the term "under oath" a couple of times in his allegations directed to defendant Furman.  However, the other allegations do not reflect that defendant Furman was functioning in capacity where an oath is typically required, such as a witness.  Rather, the other allegations indicate that defendant Furman was functioning as an advocate for the state.

months before, did not look like the picture of helpless ten- or eleven-year-old female in her school uniform depicted on the poster.  (*Id.* at 40).

Defendant Giardini elicited from defendant Hassell that exhibit 18 was her re-creation of the poster she initially made when her daughter disappeared and that it "fairly and accurately represented the original poster."  (*Id.* at 33).  Upon questioning by defendant Giardini, defendant Hassell stated that she did not recognize her daughter when she returned from Louisiana after eleven days because plaintiff had cut off her daughter's hair and dyed it red; she thought her daughter was an FBI agent or a police officer.  (*Id.* at 35-36).  Plaintiff contends that exhibit 18 did not accurately reflect how the victim looked, i.e., "at the time of the alleged offenses her breast[sic] and the shape of a young woman would be shown."  (*Id.* at 39).  The poster was admitted into evidence, and it was in the jury room when the jury deliberated.  (*Id.* at 42).  Plaintiff complains that defendant Hassell "manufactured" evidence that should not have been admitted into evidence and lied under oath.  (*Id.* at 43).

Plaintiff's claim against defendant Giardini is based on his questioning of defendant Hassell at trial and the introduction of a re-creation of the original poster that defendant Hassell had initially prepared when she learned that her daughter was missing. There is also a conclusory allegation of "illegal action taken before during and after trial tampering with evidence lying comitting[sic] perjury."  (*Id.* at 43).

As discussed above in regard to defendant Furman, defendant Giardini is entitled to absolute prosecutorial immunity for his acts that are associated with the judicial

process, in particular, those taken in initiating a prosecution and in presenting the government's case, such as his questioning of defendant Hassell or entering into evidence the poster. *Imbler v. Pachtman,* 424 U.S. 409, 430-31, 96 S.Ct. 984, 995 (1976). This immunity extends to any preparatory work that he may have done in regard to the poster, although no specific acts were mentioned, because he was still acting as an advocate for the state. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 2615 (1993). And allegations of "illegal action," "tampering with evidence," "lying." and "committing perjury" are vague and conclusory and, therefore, do not state a claim. (Doc. 1 at 43). *Fullman,* 739 F.2d at 556-57. Accordingly, considering the tenor of plaintiff's allegations, defendant Giardini is entitled to absolute prosecutorial immunity from damages, and the damages claims against him are due to be dismissed with prejudice as frivolous.

### E.  Claim Against Defendant Hassell.

The allegations against defendant Hassell reflect that she is the victim's mother and employed as a clerk at Sears Catalogue. (Doc. 1 at 5-6). Plaintiff complains about defendant Hassell's re-creation of the poster and her testimony at trial. The allegations supporting plaintiff's contentions are the same as those set out above for defendant Giardini. No allegation was made that she was involved in a conspiracy with a state actor in the original complaint. And it is only in the amended complaint that it is alleged that she "aided" the other defendants who were allegedly engaged in a conspiracy. (Doc. 6 at 9). The Court, however, has found the allegations of a conspiracy insufficient for stating

12

a claim, *supra,* and it most certainly is true in regard to defendant Hassell considering that her role is only that she "aided."

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish:  "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  To determine if a private party acts under color of state law, the United States Supreme Court uses three tests:

> (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test . . . .  The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." . . .  The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." . . . The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." . . .

*Willis v. University Health Services, Inc.*, 993 F.2d 837, 840  (11th Cir.) (citations omitted), *cert. denied*, 510 U.S. 976 (1993).

In the present action, plaintiff indicates that defendant Hassell is a private citizen, not a state actor.  Specifically, the allegations do not suggest that defendant Hassell performed a traditional state function, was coerced by the State, or was a joint participant with the State in business.  More to the point, "[i]t is beyond question that, when a private

party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.'" *Briscoe v. LaHue,* 460 U.S. 325, 329-30, 103 S.Ct. 1108, 1112-13 (1983). Therefore, considering defendant Hassell's identity, plaintiff's § 1983 claim against her is frivolous.

In the alternative, defendant Hassell is being sued for her testimony at trial, which includes her testimony that laid the foundation for the introduction of the poster into evidence.  However, "§ 1983 does not authorize a damages claim against private witnesses [at trial]." *Id.* at 335, 103 S.Ct. at 1116.  "In short, common law provided absolute immunity from subsequent damages liability for all persons-governmental or otherwise-who were integral parts of the judicial process." *Id.* at 335, 103 S.Ct. at 1115-16.  Thus, defendant Hassell is entitled to absolute immunity from damages for her testimony at plaintiff's trial and such claim is due to be dismissed as frivolous.

### F.  Claims Against Defendant Thomas.

The claims against Judge Thomas are contained in the amended complaints at documents 5 through 7.  As plaintiff did in the original complaint, he repeated himself extensively in these three documents regarding Judge Thomas's alleged failings, some of which are also redundant of claims contained in his original complaint but which were directed to others.  Plaintiff's amended complaints consisted of 13, 16, and 14 pages respectively, and are lengthier than needed for the information that they convey.

Plaintiff alleges that defendant Thomas made sure that he received plaintiff's cases because they were high profile cases and he wanted to ensure that plaintiff was convicted.

14

(Doc. 7 at 4).  Thus, he allowed defendant Furman and Giardini do as they pleased.  (Doc. 7 at 4).  Defendant Thomas's prejudice allegedly manifested itself in the vindictiveness of plaintiff's sentences.  (Doc. 7 at 4 ).

Plaintiff asserts that on October 4, 2005,  he filed a "motion for mandamus to remove Judge Thomas" because defendant Thomas showed "deep seated favoritism" or "antagonism,"[8] which plaintiff contends is the basis for recusal under 28 U.S.C. § 144 and § 455.[9]  (Doc. 6 at 1-2).  One of the bases for the motion is that defendant Thomas had presided over the revocation hearing of Michael "Red" Phillips where defendant Hassell, the victim's mother, testified and was allowed to make statements against plaintiff which plaintiff could not cross-examine.  (Doc. 6 at 2).  Thus, plaintiff complains that defendant Thomas was allegedly prejudiced against him when he came to trial and it was compounded by the fact that defendant Hassell was dating one of the prosecutors.  (Doc. 6 at 2-3).

In the motion for mandamus to remove Judge Thomas, plaintiff also accuses defendants Furman and Giardini of conspiring with defendant Thomas to convict plaintiff.  (Doc. 6 at 13-14 (handwritten copy of motion); Doc. 7 at 1).  Plaintiff maintains that defendant Thomas should have recused himself from plaintiff's cases when the

---

[8]The Court is treating the "motion for mandamus to remove Judge  Thomas" as the same as the "motion for recusal" because they are identified as being filed on the same day and have the same goal - recusal.

[9]The Court notes that  28 U.S.C. § 455 is a federal statute that applies to justices, judges, and magistrate judges who are employed by the federal government (United States) and 28 U.S.C. § 144 is a federal statute that applies to proceedings in United States district courts.

mandamus motion was filed, but he did not and then showed prejudice to plaintiff by ruling for the prosecution on the motion to consolidate.  (Doc. 5 at 8; Doc. 6 at 14).[10]

Plaintiff alleges that defendant Thomas gave him a sentence greater than allowed by law for his conviction of criminal solicitation to commit murder.  (Doc. 5).  That is, plaintiff was sentenced to imprisonment for life; whereas, that his sentence should have been two to twenty years.  (Doc. 5 at 2-4; Doc. 7 at 5).  Furthermore, this sentence is

---

[10]The plaintiff alleges that

> [T]he motion of mandamus to remove Judge Thomas shows that William Villar did openly accuse "Judge Herman Young Thomas" of illegal wrong doings almost two (2) years before he "Judge Herman Young Thomas" was alleged and charged with corrupt dealings "fixing trials and sentences etc." in the Thirteenth Judicial Circuit Court Mobile County Mobile County Alabama along with Assistant District Attorneys "John Furman and Steve Giardini [sic] should ordered whereof plaintiff petitions this Honorable Court for the illegal wrong doings illegal sentences violation of rights under the Constitution of the United States denying recusal that sentences be reversed remanded vacated and new trials be granted William Herbert Villar and other considerations.

(Doc. 7 at 7).

The Court refers to this passage in plaintiff's amended complaint because plaintiff's hearing or reading about Judge Thomas's difficulties may have prompted him to add Judge Thomas to this action when he was not a named defendant in the original complaint.  However, from what the Court is aware of in the media, Judge Thomas's difficulties did not involve assistant district attorneys.

If there is, in fact, a problem with one of plaintiff's convictions or sentences, the manner in which it may be remedied is through filing appeals and collateral relief proceedings in state court and then filing a federal habeas corpus petition.  And if there were actions taken by Judge Thomas that injured plaintiff, plaintiff's injury will have to be of constitutional magnitude to recover in damages in a § 1983 action *and* Judge Thomas's actions will have to be of the nature that Judge Thomas would not be entitled to absolute judicial immunity in order for there to be a monetary recovery.

more severe than sentences in other cases that he gives as examples, is cruel and unusual punishment, and is vindictive.  (Doc. 5 at 12; Doc. 6 at 5).  Plaintiff contends that he received this sentence even though he did not have a prior conviction, owned two homes, and helped save a jail officer's life during an assault.  (Doc. 5; Doc. 6 at 5; Doc. 7 at 6). And plaintiff's sentence for enticing a minor to enter a vehicle allegedly exceeds the sentence provided by the statute that was in effect at the time of the offense by "double," was an abuse of discretion, and was grossly disproportionate for the severity of the offense.  (Doc. 5 at 13; Doc 6 at 4, 10).  In addition, defendant Thomas allowed the poster into evidence even though defendant Hassell allegedly lied and said it was the original poster, and he consolidated all of the cases.  (Doc. 6 at 8).

Plaintiff seeks to have his sentences reversed, remanded, and revoked; to be granted a new trial (Docs. 5 at 8, 44; Doc. 7 at 12); to have the charges dismissed with prejudice; to have charges brought against defendants for obstruction of justice, lying under oath and tampering with evidence; and to have an investigation of the wrongful prosecution of plaintiff by the United States Attorney General (Doc. 6 at 9, 11), and to be granted his lost wages and property as he requested in the original complaint (Doc. 7 at 12).

The majority of plaintiff's requests for relief in his amended complaints are directed to having his sentences or convictions altered or dismissed, thereby gaining an instant or more immediate release.  As discussed *supra*, these injunctive relief requests are in the nature of habeas claims which are not cognizable in a § 1983 action.  *Abella,* 63

17

F.3d at 1066 (quoting *Preiser,* 411 U.S. 475 (1973)).  These claims for injunctive relief are therefore to due to be dismissed as frivolous.

Plaintiff's request for charges to be brought against defendants presumably after an investigation of his prosecution is without merit.  "[A] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another."  *Otero v. United States Attorney General*, 832 F.2d 141, 141 (11th Cir. 1987) (affirming the dismissal of an action seeking the writ of mandamus to require the defendants to investigate and prosecute a former Florida State Attorney) (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)).  "A decision to prosecute is within the United States Attorney's substantial discretion."  *United States v. Ballard,* 779 F.2d 287, 295 (5th Cir.), *cert. denied,* 475 U.S. 1109 (1986).  A court is precluded from ordering a prosecution by the United States Attorney based on the separation of powers doctrine and because the determination of whether to commence a prosecution is a process that was not contemplated for the courts to engage in and, therefore, the courts are not equipped to handle a prosecution.  *Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 379-82 (2d Cir. 1973) (affirming the dismissal of a complaint seeking the investigation and prosecution of persons who allegedly violated federal and state criminal statutes).  Accordingly, plaintiff's request to prosecute the defendants is unavailable to him in this action and such a claim is due to be dismissed as frivolous.

Even though most of plaintiff's requests for relief were for injunctive relief, he also requests lost wages and his property as he requested in the original complaint.  (Doc

7 at 12; Doc. 1 at 8, 44).  In light of this request the Court will discuss a claim for damages against defendant Thomas.  In a § 1983 action, a judge is entitled to absolute judicial immunity from damages for those acts taken while he was acting in his judicial capacity unless he acted in the "'clear absence of all jurisdiction.'"  *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105 (1978) (quoting *Bradley v. Fisher,* 80 U.S. 335, 13 Wall. 335, 351 (1871)); *Simmons v. Conger,* 86 F.3d 1080, 1084-85 (11th Cir. 1996); *Scott v. Hayes,* 719 F.2d 1562, 1563 (11th Cir. 1983).  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority[.]"  *Stump,* 435 U.S. at 356, 98 S.Ct. at 1105.  Absolute judicial immunity ensures "'that a judicial officer, in exercising that authority vested in him, [is] free to act upon his own convictions, without apprehension of personal consequences to himself'"  *Stump,* 435 U.S. at 355 (quoting *Bradley,* 13 Wall. at 347), which is a "'principle of the highest importance to the proper administration of justice[.]'"  *Id.*

An Alabama circuit court judge has exclusive original jurisdiction over all felony prosecutions.  ALA. CODE  § 12-11-30(2) (1996).  Plaintiff was convicted of rape, second degree, a Class B felony, *see* ALA. CODE § 13A-6-62(b) (1977); sodomy, second degree, a Class B felony, *see* ALA. CODE § 13A-6-64(b) (1987); enticing a minor to enter a vehicle, house, etc., for immoral purposes, a Class C felony, *see* ALA. CODE § 13A-6-69(b) (1975); intimidating a witness, a Class C felony, *see* ALA. CODE § 13A-10-123(c) (1977); criminal solicitation to commit murder, a Class A felony, *see* ALA. CODE § 13A-4-1(f)(1) (1977); and escape, second degree, a Class C felony, *see* ALA. CODE § 13A-10-

32(b) (1977).  Clearly, defendant Thomas was acting within his jurisdiction as a circuit court judge when he handled the felony criminal cases against plaintiff.

The allegations directed to defendant Thomas arise from defendant Thomas handling plaintiff's criminal cases, conducting the trial, and ordering the resultant sentences.  That is, plaintiff takes issue with defendant Thomas granting the motion for consolidation of his criminal cases, denying the motion for mandamus to remove Judge Thomas, sentencing him to life imprisonment on the charge of criminal solicitation to commit murder, sentencing him to ten years on the charge of enticing a child into a vehicle, and allowing the poster to be entered into evidence even though it was not the original poster.  These are rulings with which plaintiff is displeased.   However, entering rulings in cases on their dockets are acts typically performed by judges.  Thus, it is clear that defendant Thomas was dealing with plaintiff in his judicial capacity at the time of the alleged violations

Because both prongs of the *Stump* test are satisfied, i.e., defendant Thomas acted within his jurisdiction and in his judicial capacity, defendant Thomas is entitled to absolute judicial immunity from any damages claim that plaintiff may have against him. *Simmons,* 86 F.3d at 1084-85. And the damages claims against defendant Thomas are due to be dismissed as frivolous.

**IV.  Conclusion.**

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)

and (ii) because plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.[11]

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 28th day of March,  2008.

**s/WILLIAM E. CASSADY**
**UNITED STATES MAGISTRATE JUDGE**

---

[11]The Court is foregoing an analysis of plaintiff's claims under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994), in light of the grounds available to dismiss the defendants from this action at this time.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.     ***Objection***.  Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28

U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.


s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE